IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JAMES SWINFORD, JR.                                                                                    PLAINTIFF

V.                                                                                             NO. 3:09CV062-P-A

JIMMY DEAN WHITTEN, et al.                                                                         DEFENDANTS

MEMORANDUM OPINION

Presently before the court is the Defendants' motion for summary judgment. The Plaintiff has responded and this matter is ripe for review.

*A. Factual Background*

The Plaintiff, an inmate currently in the custody of the Mississippi Department of Corrections, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. In his complaint, the Plaintiff stated a claim of excessive force arising out of his arrest on December 3, 2007. On this date, the Plaintiff had escaped from the custody of the Tippah County Sheriff and was fleeing. He was found in Union County where he was ultimately apprehended.

The hunt for Swinford began with a 911 phone call from the residence of Mark and Linda Vance reporting that her son, Swinford, had broken into the home brandishing a handgun. Officers were dispatched to the home. By the time they arrived, Swinford had fled on foot. With the assistance of a K-9 officer, Swinford was tracked into the woods. When officers approached, Swinford stated that he was not going back to prison, shot at the officers and then ran.

Swinford was then seen by Defendant Jimmy Dean Whitten running through a pasture. Whitten reported that he was in pursuit of Swinford. While giving chase on foot, Swinford fired a

shot at Whitten.[1] Whitten returned fire. Swinford fell and Whitten ran towards him. As Swinford was trying to get back to his feet, Whitten pulled the still armed Swinford back to the ground. Swinford admittedly resisted and the men struggled for control of the gun. During the struggle, Swinford kept putting the gun to his head. Whitten stated that he would grab the gun, while in Swinford's hand, and slam it against Swinford's head in an attempt to get him release the weapon. Whitten also explained that during the struggle, Swinford repeatedly attempted to pull the trigger. To prevent the gun from firing, Whitten kept his finger between the firing pin and the hammer.[2] It was only when two other officers arrived at the scene, that the men were able to subdue and restrain Swinford. As a result of his capture and arrest, Swinford suffered and received treatment for two broken ribs and a gash on his head that required stitches to close.

Following his capture, the Plaintiff pled guilty to felon in possession of a firearm and aggravated assault on a police officer arising out of these events. Swinford was sentenced to twenty-years imprisonment with ten-years suspended.

The Defendants have now filed a motion for summary judgment, arguing that the use of force was reasonable under the circumstances or alternatively that Whitten is entitled to qualified immunity.[3] In his response to the motion for summary judgment, the Plaintiff does not dispute these

---

[1] A shot was fired from the Plaintiff's gun. The Plaintiff claims that the gun fired when he fell. Whitten states that the Plaintiff turned and purposefully discharged the gun. Indeed, by pleading guilty to aggravated assault following this incident, Swinford admitted that the knowingly and with malice fired the gun at Whitten.

[2] Medical records show that Whitten suffered and was treated for injuries to his fourth finger.

[3] The Defendants also assert that Union County Sheriff Office should be dismissed. The court agrees. Union County Sheriff's Department is not a proper party to this civil matter. *See* Fed. R. Civ. P 17(b); *Montgomery v Mississippi*, 498 F. Supp. 2d 892 (S.D. Miss. 2007) (the sheriff's office was not amenable to suit according to Mississippi law, because the plaintiff failed to show it enjoyed an existence separate from the county). The County Defendant will be

events, he argues, rather, that the injuries he sustained were inflicted after he was restrained.

### B.  Standard for Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case").  Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274.  That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e).  All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 (1986).  Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

---

dismissed.

*C. Discussion*

When reviewing an excessive force claim, courts must balance the constitutional rights of prisoners with the needs of officials to effectively use force to maintain order. *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). To establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." S*ee Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Not every malevolent touch gives rise to a constitutional claim of excessive force; in fact, the Eighth Amendment prohibition against "'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (citations omitted).

Assessing the reasonableness of a police officer's use of force involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lytle v. Bexar County*, 560 F.3d 404, 411 (5th Cir. 2009). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses and immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 411.

In this case, the undisputed facts are the Plaintiff was an escapee fleeing from authorities. The Plaintiff entered a home brandishing a gun. When law enforcement responded to the 911 call from the home, the Plaintiff had fled on foot presumably still armed. Once the Plaintiff was located,

he intentionally fired his weapon at two officers and again fled. Defendant Whitten saw and pursued the Plaintiff. The Plaintiff turned and fired his weapon at Whitten who returned fire. When Whitten reached the Plaintiff, a struggle ensued for control of the gun. During the wrestling, the Plaintiff admittedly tried to discharge the gun in order to harm himself or Whitten. While battling for control of the gun, Whitten managed to prevent the Plaintiff from successfully firing another shot by lodging his finger between the triggering mechanism. Whitten also stated that he slammed the gun against the Plaintiff's head in an attempt to disarm him. Both the Plaintiff and Whitten suffered injuries.

The court finds it above dispute that the force used, to capture an armed and dangerous fleeing escapee who had demonstrated his willingness to use deadly force against law enforcement, was not excessive. Only after being fired upon by Swinford did Whitten return which was a perfectly acceptable and reasonable response to the use of deadly force. *See Hathaway v. Bazany*, 507 F.3d 312, 320-21 (5th Cir. 2007) (holding that deadly force is authorized when an officer is faced with "a credible, serious threat to the physical safety of the officer."). The officers and particularly Whitten used no more force than necessary to capture the violent armed Plainitff. *Bell v. Mahan*, 47 F.3d 424, 1995 WL 71008 at *2 (5th Cir. Jan. 24, 1995) (excessive force claim failed where deputy was involved in a physical struggle with a fugitive over a loaded weapon and fugitive was accidentally shot in the shoulder during the fight).

The Plaintiff, however, argues that the injuries he sustained were inflicted after he was subdued rather than while he was resisting arrest. The record does not support the Plaintiff's assertion. Swinford admittedly fired his weapon at officers. He admitted that he struggled for control of the gun. He acknowledged that he intended to shoot or harm himself with the gun. In the related criminal case, the Plaintiff confessed that he willfully, purposefully, and knowingly

5

attempted to cause bodily injury to Whitten with a deadly weapon by shooting at Whitten. Other officers saw Whitten and Swinford struggling. Whitten's testimony regarding hitting Swinford in the head with the gun to disarm him, explains the gash on Swinfords head. If, as the Plaintiff contends, he was beaten and pistol whipped after being subdued, he would have incurred more much severe injuries. The injuries Swinford suffered are consistent with Whitten's and the other responding officers' version of events.

Furthermore, handcuffing an individual does not necessarily render that person incapable of inflicting serious bodily injury. There is no *per se* rule prohibiting law enforcement from using force against a restrained but still combative or uncooperative individual. The law only requires that the force used be reasonable under the circumstances. *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (A plaintiff can be compensated only for injury caused by the use of excessive force. There can be no award for injury caused by reasonable force.). Nevertheless, other than his own self-serving testimony, there is no proof that any force was used after Swinford was restrained and placed in custody.

In conclusion, the court finds that there is no genuine issue of material fact which requires a jury's consideration. F.R.Civ.P. 56. The force used by Whitten up to an included deadly force was reasonable under the circumstances. The injuries Swinford sustained were not the result of excessive force. Accordingly, the motion for summary judgment (docket entry 41) shall be granted.

An evidentiary hearing will be set by further order of the court.

This the 17th day of February, 2011.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE